UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| ANNALEE GREEN,<br>      Plaintiff,<br>- against –<br><br>WILLIAM M. BROWN,<br>      Defendant, | Case No. 23-cv-8532<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

-----------------------------------------------------------------x

## PRELIMINARY STATEMENT

1. This is an action brought on behalf of Plaintiff Annalee Green ("Plaintiff" or "Ms. Green"), who was employed directly by Mr. William M. Brown ("Defendant" or "Mr. Brown") to provide 24-hour care for his elderly parents William Brown Sr. ("Senior Mr. Brown") and Madeline Brown ("Ms. Brown") (together "Brown's Parents" or "Defendant's Parents") at Brown's Parents' home located in Huntington Station, New York from June 15, 2021 until December 17, 2022.

2. Ms. Green was paid well below the required state minimum wage during the entirety of her employment by Mr. Brown, in violation of state labor law. At certain times during her employment, Ms. Green's rate of pay also fell below the federal minimum wage, in violation of federal labor law. Ms. Green worked four 24-hour shifts per week for Defendant totaling 96 hours of compensable time weekly. Initially, Ms. Green was paid $160 per working day, or approximately $6.67 per hour. On or around July 8, 2021, Ms. Green received a raise, to $190 per working day, or approximately $7.92 per hour. In or around December 2021, Ms. Green received a second raise, to $200 per working day, or approximately $8.33 per hour.

1

3. Despite working approximately 96 hours per week, Ms. Green did not receive legally required overtime pay during any point during her employment, in violation of federal and state labor laws.

4. Despite working four 24 hour shifts each week, Ms. Green was never paid an additional hour at the minimum wage on the days in which her spread of hours exceeded ten hours, in violation of state labor law.

5. Ms. Green also did not receive legally required pay notices or wage statements in violation of federal and state labor laws and suffered other labor violations.

6. Ms. Green repeatedly complained about her low pay throughout her employment. Instead of meeting his obligations to pay minimum and overtime wages, Defendant unlawfully retaliated against Plaintiff by terminating her via text message on December 17, 2022. Defendant's termination message explicitly states that Ms. Green's termination was a result of her complaints regarding low pay.

7. Plaintiff brings this action against Defendant seeking declaratory and injunctive relief, as well as monetary damages including unpaid wages, liquidated damages, compensatory damages, statutory damages, and reasonable attorneys' fees and costs for violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §§ 201 et. seq.; the New York Labor Law ("NYLL") Article 6, §§ 190 et. seq. and Article 19 §§ 650 et. seq.

**JURISDICTION AND VENUE**

8. The Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 et seq., 29 U.S.C. § 216 and this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

9. The Court has supplemental jurisdiction over Plaintiff's pendant state law claims under 28 U.S.C. § 1367 because those claims arise out of the same common nucleus of operative facts. Plaintiff's state law claims arise out of the same case or controversy as Plaintiff's federal claims.

10. Venue is proper in this Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

11. Defendant resides in the State of New York.

12. This Court has personal jurisdiction over the Defendant, pursuant to New York Civil Practice Law and Rules § 301, in that, <u>inter alia</u>, Defendant is domiciled in this state, transacts business within this State, employed Plaintiff within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York.

## **THE PARTIES**

### **Plaintiff**

13. Plaintiff Annalee Green is a 50-year-old woman, who is a resident of New York State and currently resides in The Bronx, New York.

14. Plaintiff was employed by Defendant as a home care aide who was assigned to work 24-hour shifts from June 15, 2021 until she was terminated on December 17, 2022.

15. At all times relevant to this action, Plaintiff was a home care aide within the meaning of New York Public Health Law § 3614-c(d).

16. At all times relevant to this action, Plaintiff was a non-exempt employee of Defendant within the meaning of the FLSA and the NYLL.

3

17. The FLSA applies to employees who are subject to either individual coverage or enterprise coverage. 29 U.S.C. §§ 206(a), 207(a).

18. While individual coverage is where employees are personally engaged in the production of goods for commerce or engaged in commerce (interstate commerce), Congress has determined that employment of persons in domestic service in households "affects commerce." 29 U.S.C. § 202(a); see 29 C.F.R. § 552.99 ("[domestic workers] handle goods such as soaps, mops, detergents, and vacuum cleaners that have moved in or were produced for interstate commerce and also that they free members of the household to themselves to engage in activities in interstate commerce.").

19. The FLSA extends minimum wage protections to domestic workers. See 29 U.S.C. § 206(f) (extending minimum wage protections to "[e]mployees in domestic service"); see also Velez v. Sanchez, 693 F.3d 308, 327 (2d Cir. 2012) (stating that "[t]he plain language of the FLSA makes clear that the 'mom-and-pop' exception" of the FLSA does not apply to domestic workers).

20. Similarly, the NYLL explicitly extends its protections to domestic workers. NYLL § 170; see also NYLL § 190(4) (defining "manual worker"); Lopez-Serrano v. Rockmore, 132 F. Supp. 3d 390, 404 (E.D.N.Y. 2015) ("The NYLL defines a 'manual worker' as a 'mechanic, workingman, or laborer,' which, in the Court's view, includes a domestic worker such as the Plaintiff.")

**Defendant**

21. Upon information and belief, at all times relevant to this action, Defendant resided at 28 Cherrywood Drive, East Northport, New York 11731.

22.     At all times relevant to this action, Defendant was Plaintiff's employer within the meaning of the FLSA and NYLL. Defendant interviewed Plaintiff for the position, hired her, determined her rate of pay, scheduled her hours, assigned her work duties, and later fired her.

## STATEMENT OF FACTS

### Plaintiff's Work for the Brown Family

23.     Plaintiff is a home care aide with extensive experience caring for elderly people. Plaintiff has worked as a home care aide with elderly people for over a decade and has completed an online course on safety and elder care.

24.     In or around June of 2021, Plaintiff engaged a woman named Latisha[1] to assist her with finding work as a home care aide.  Latisha was in contact with Mr. Brown and discussed the initial details of the employment arrangement with him. Later, she directly introduced Plaintiff to the Defendant and occasionally acted as an intermediary between the two.

25.     Pursuant to an oral agreement between the Plaintiff and Defendant, Plaintiff was employed by Defendant to provide 24-hour care for one adult, Defendant's elderly mother, Madeline Brown.

26.     Plaintiff accepted Defendant's job offer. However, on June 15, 2021, when Plaintiff started the job, it became clear that Defendant's elderly father, William Brown Sr. also needed extensive care. Thus, despite her agreed-upon terms of employment, Plaintiff became the primary caretaker for both of Defendant's Parents.

27.     Upon information and belief, Defendant's Parents suffered multiple health conditions and required constant supervision and care.

---

[1] Latisha is identified as "Latisha Spweela" on the Zelle account associated with her phone number. She may also go by "Latisha Smith."

28. Madeline Brown had limited mobility, required the use of a wheelchair, experienced incontinence, and was otherwise unable to care for herself independently.

29. William Brown Sr. suffered from joint pain, diabetes, and severe visual impairment.

30. Plaintiff was required to supervise the Senior Mr. Brown closely whenever he was awake, as he was at risk of falling at any time.

31. Plaintiff's daily tasks included feeding Brown's Parents, assisting them in the restroom, administering medications prepared by Mr. Brown to Brown's Parents, checking the Senior Mr. Brown's blood sugar and weight, moving Ms. Brown to and from her wheelchair, and bathing Ms. Brown.

32. Plaintiff's duties also included domestic work, such as regularly changing the sheets, washing Brown's Parents' bedding and clothes, separating the recycling and taking out the trash, vacuuming and cleaning the home, preparing three meals per day for Brown's Parents, washing the dishes, and otherwise cleaning up after cooking. These duties took up more than 20 percent of Plaintiff's time at work.

**Plaintiff's Schedule and Pay**

33. Throughout the duration of her employment with Defendant, Plaintiff was on duty from 10:00 a.m. on Monday through 10:00 a.m. on Friday, in a series of four 24-hour shifts totaling 96 hours per week. Another care worker relieved Plaintiff from 10:00 a.m. on Friday until 10:00 a.m. on Monday, when Plaintiff returned to work.

34. During each 24-hour shift, Plaintiff was not free to leave the premises.

35. During her employment with Defendant, Plaintiff maintained a separate residence and would return home on the weekends, thus classifying her as a non-residential employee under the New York Labor Law.

6

36. Plaintiff did not receive paid sick leave or paid vacation. When she worked on a federal holiday, Defendant paid her an additional $100.

37. Domestic workers and home care aides fall under the New York State Department of Labor's Minimum Wage Order for Miscellaneous Industries and Occupations (hereinafter "Misc. Wage Order") which applies to all non-exempt workers who are not covered under a different wage order. See 12 N.Y.C.R.R. § 142-2.14.

38. The Misc. Wage Order requires than an employee be paid the minimum wage for the time they are "required to be available for work at a place prescribed by the employer." 12 N.Y.C.R.R. § 142-2.1(b).

39. In Andryeyeva v. New York Health Care, Inc., the New York State Court of Appeals agreed with the Department of Labor's interpretation of the Misc. Wage Order, holding that compensable hours of home care aides working 24-hour shifts must be analyzed under the same framework as other 24-hour shift workers. 124 N.E.3d 162 (N.Y. 2019).

40. Under Andryeyeva, the compensable hours of 24-hour shift workers are determined according to the DOL's longstanding guidance, which conforms with federal guidance. See 29 C.F.R. § 785.22. The DOL's guidance only permits the exclusion of sleep time if there was "'an express or implied agreement' to exclude time for sleep, the employer provided 'adequate sleeping facilities for an uninterrupted night's sleep,' the employee actually received five hours of sleep, and interruptions to perform duties were considered work time." Id. at 167 (quoting DOL, Mem. From George Ostrow to Daniel A. Daly [Oct.27, 1969]).

41. Also, under Andryeyeva, the Court affirmed that:

> "(i)f an aide does not receive five hours of uninterrupted sleep, the eight-hour sleep period exclusion is not applicable and the employee must be

paid for all eight hours. Similarly, if the aide is not actually afforded three work-free hours for meals, the three-hour meal period exclusion is not applicable." Id. (quoting DOL Opinion Letter from Maria L. Colavito, Counsel, [Mar. 11, 2010]).

42. This interpretation by the DOL imposes "strict rules that employers must comply with if they wish to exclude such breaks from compensable time." Id. at 176 (internal quotations omitted). "[F]ailure to provide a home health care aide with the minimum sleep and meal times required under DOL's interpretation of the Wage Order is a "hair trigger" that immediately makes the employer liable for paying every hour of the 24-hour shift, not just the actual hours worked." Id. at 178.

43. No agreement, express or implied, existed between Plaintiff and Defendant to exclude rest or meal periods from compensable work hours.

44. Because Brown's Parents required constant daytime surveillance and assistance, Plaintiff did not receive three hours of scheduled meal breaks.

45. Further, Brown's Parents regularly required extensive assistance during sleeping hours, requiring Plaintiff to remain alert and on call at night. Brown's Parents regularly needed assistance using the bathroom in the night. On approximately two occasions, Plaintiff had to call 9-1-1 because Ms. Brown fell from her bed and Plaintiff could not lift her back to her bed without assistance.

46. Thus, for the entirety of her employment, Plaintiff worked 96 compensable hours per week in four consecutive 24-hour shifts.

47. From the start of Plaintiff's employment in June 2021, Defendant paid Plaintiff a flat salary of $160 per working day, totaling $640 per week.

48. On or around July 8, 2021, Defendant increase Plaintiff's flat daily rate to $190 per working day, totaling $760 per week.

49. In or around December 2021, Plaintiff's flat daily rate was increased to $200 per working day, totaling $800 per week.

50. Defendant paid Plaintiff entirely in cash.

51. As a result, Plaintiff's hourly payrate amounted to $6.66 per hour from June 15, 2021 until July 8, 2021, $7.92 from July 8, 2021 until December 2021, and $8.33 per hour thereafter. Until approximately July 8, 2021, Plaintiff's payrate fell below the required federal minimum wage. Plaintiff's rate of pay fell below the required state minimum wage for the entirety of her employment.

52. Although Plaintiff consistently worked more than 40 hours each week, Defendant did not pay Plaintiff overtime at a rate of at least one-and-a-half times the minimum wage, in violation of federal and state law. There was no understanding that Plaintiff's daily or weekly salary would be inclusive of any overtime premium.

53. On each of Plaintiff's workdays, the interval between the beginning and the end of the workday exceeded ten hours.

54. However, Plaintiff was never paid an additional hour at the minimum wage on the days in which her spread of hours exceeded ten hours, as required by 12 N.Y.C.R.R. § 142-2.4.

55. At the time Plaintiff began working for Defendant, Defendant failed to furnish to Plaintiff an accurate written notice of her wage rate and a written disclosure of the other information required by NYLL § 195(1) in her primary language.

56. Defendant never thereafter furnished to Plaintiff written notice or a disclosure of the information required by NYLL § 195(1).

57. In addition, Defendant failed to furnish proper and accurate wage statements to Plaintiff as required by NYLL § 195(3) with each payment of wages.

**Termination**

58. On numerous occasions throughout her employment, Plaintiff complained to Defendant, directly and through Latisha, about her wages, asserting that they were insufficient and did not allow her to support herself and her family. In actuality, Plaintiff's wages fell below the state minimum wage, and at times also below the federal minimum wage. Additionally, she did not receive legally required overtime pay.

59. On December 17, 2022, approximately five days after Plaintiff's last complaint about her wages, Defendant terminated Plaintiff's employment by sending her a text message that stated in part, "I don't want you back on Monday. I'm not dealing with you asking for more money every few months. Thank you for your understanding."

60. Plaintiff then responded to Defendant's message, stating in part, "I spoke up for my rights because I was lied to about the job and you're firing me for the truth?" Defendant did not respond.

61. Upon information and belief, Defendant terminated Plaintiff's employment in retaliation for her requests to be paid the minimum wage and receive overtime pay, in compliance with the law.

62. Plaintiff became unexpectedly unemployed and was affected in myriad ways, leaving her, a single mother, unable to financially support herself or her family.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Minimum Wages**

63. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

64. Defendant was required under 29 U.S.C. § 206(f) to pay Plaintiff at the applicable federal minimum wage rate of $7.25 per hour for all hours worked.

65. Plaintiff does not fall under the companionship exemption as her principal duties included extensive housework constituting more than 20 percent of her hourly work.

66. Defendant willfully and intentionally failed to pay Plaintiff the minimum wage she was entitled to receive.

67. Defendant was aware or should have been aware that the failure to pay the minimum wage as described in this Complaint was unlawful.

68. Defendant did not make a good faith effort to comply with the FLSA with respect to his compensation of Plaintiff.

69. Defendant also violated the FLSA by failing to properly keep records as required by statute, 29 U.S.C. § 211(c).

70. As Defendant's violations of the FLSA was willful, a three-year statute of limitations applies under 29 U.S.C. § 255.

71. For his willful underpayment of wages, Defendant is liable to Plaintiff for unpaid minimum wage compensation in an amount to be determined at trial and is entitled to recovery of such amounts, together with liquidated damages, reasonable attorneys' fees, and the costs of this action, pursuant to 29 U.S.C. § 26 et. seq.

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Overtime**

72. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

73. Defendant willfully failed to pay Plaintiff overtime at a rate of at least one-and-a-half times her regular hourly rate for every hour Plaintiff worked above forty (40) hours in a work week.

74. Defendant's failure to pay Plaintiff her overtime premium violates the Fair Labor Standards Act, 29 U.S.C. § 207(l) and its implementing regulations.

75. Plaintiff does not fall under the companionship exemption as her principal duties included extensive housework constituting more than 20 percent of her hourly work.

76. Defendants also violated the FLSA by failing to properly keep records as required by statute, 29 U.S.C. § 211(c).

77. Plaintiff is entitled to her unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

78. Plaintiff is also entitled to costs of Court, pursuant to 29 U.S.C. § 216(b).

79. Plaintiff seeks, and is entitled to, attorneys' fees incurred by her counsel, pursuant to 29 U.S.C. § 216(b)

### THIRD CAUSE OF ACTION
### Fair Labor Standards Act – Retaliation

80. Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

81. Defendant willfully retaliated against Plaintiff by terminating her employment based on her complaints about not being paid the minimum wage or receiving overtime pay for her 24-hour care of Defendant's Parents, in violation of 29 U.S.C. § 215(a)(3).

82. Plaintiff seeks, and is entitled to, legal or equitable relief as may be appropriate, pursuant to 29 U.S.C. § 216(b).

83. Plaintiff is also entitled to costs of Court, pursuant to 29 U.S.C. § 216(b).

84. Plaintiff seeks, and is entitled to, attorneys' fees incurred by her counsel, pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION
### New York Labor Law – Unpaid Minimum Wages

85. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

86. At all relevant times, Plaintiff was covered by the NYLL and supporting New York State Department of Labor Regulations.

87. Defendant was required to pay Plaintiff at the applicable New York State minimum wage rate for all hours worked.

88. Defendant was required to pay Plaintiff at an hourly rate of at least $14 for all hours worked from June 15, 2021 through December 30, 2021, at least $15 for all hours worked from December 31, 2021 to September 30, 2022, and at least $17[2] for all hours worked from October 1, 2022 under NYLL § 652 and corresponding New York State Department of Labor Regulations, including, but not limited, to 12 N.Y.C.R.R. § 142-2.1.

---

[2] On October 1, 2022, the minimum wage for home care aides working on Long Island increased to $17 per hour. N.Y. Pub. Health Law § 3614-f (McKinney).

13

89. Defendant willfully failed to pay Plaintiff her minimum hourly wages in violation of the NYLL Article 19, §§ 650 et seq., and corresponding New York State Department of Labor Regulations.

90. For his willful underpayment of wages, Defendant is liable to Plaintiff for unpaid minimum wage compensation in an amount to be determined at trial. Plaintiff is entitled to recovery of such amount, together with liquidated damages, pre-and post-judgment interest, reasonable attorney's fees, and the costs of this action, pursuant to NYLL § 663.

### FIFTH CAUSE OF ACTION
**New York Labor Law – Unpaid Overtime**

91. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

92. Defendant willfully failed to pay Plaintiff overtime at a rate of at least one-and-a-half times her regular hourly rate for every hour she worked above forty (40) hours in a single work week. NYLL § 170; 12 N.Y.C.R.R. § 142-2.2.

93. Defendant's failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198 and 663.

94. Plaintiff is entitled to her unpaid wages mandated by NYLL, plus an additional equal amount as liquidated damages, as a consequence of the Defendant's unlawful actions and omissions in accordance with NYLL §§ 198 and 663.

95. Plaintiff also seeks, and is entitled to, attorneys' fees incurred by her counsel, costs of Court, and interest.

### SIXTH CAUSE OF ACTION
**New York Labor Law – Spread of Hours**

96. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

97. Plaintiff regularly worked days in which the end of her work shift was more than ten (10) hours from the beginning of her work shift.

98. Defendant never paid Plaintiff an additional hour of pay at the minimum wage rate for every day in which the interval between the beginning and the end of Plaintiff's workday was more than ten (10) hours.

99. Defendant failed to provide Plaintiff's spread of hours pay under the NYLL. 12 N.Y.C.R.R. § 142-2.4.

100. Plaintiff is entitled to her unpaid spread of hour pay as mandated by NYLL, plus an additional equal amount as liquidated damages, as a consequence of the Defendants' unlawful actions and omissions, in accordance with NYLL §§ 198 and 663.

101. Plaintiff also seeks, and is entitled to, attorneys' fees incurred by her counsel, costs of Court, and interest.

## SEVENTH CAUSE OF ACTION
**New York Labor Law – Wage Notice and Wage Statement Violations**

102. Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

103. Defendant failed to provide Plaintiff, at the time of her hiring or thereafter, accurate wage notices in her primary language containing her rates of pay and other information as required by NYLL § 195(1).

104. Defendant also failed to provide Plaintiff with accurate wage statements with every payment of wages that included all of the information required under NYLL § 195(3).

105. For Defendant's violation of NYLL § 195(1), Plaintiff is entitled to $50 for each workday in which this violation continued to occur, in an amount not to exceed $5,000, pursuant to NYLL § 198(1-b).

106. For Defendant's violation of NYLL § 195(3), Plaintiff is entitled to $250 for each workday in which this violation continued to occur, in an amount not to exceed $5,000, pursuant to NYLL § 198(1-d).

107. Plaintiff also seeks, and is entitled to, attorneys' fees incurred by her counsel, costs of Court, and interest.

### EIGHTH CAUSE OF ACTION
### New York Labor Law – Retaliation

108. Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

109. Defendant willfully retaliated against Plaintiff by terminating her employment because of her complaints about not being paid the minimum wage or receiving overtime pay for her 24-hour care of Defendant's Parents, in violation of NYLL § 215.

110. Pursuant to NYLL § 215(1)(a), Plaintiff has served notice of this Complaint upon the Attorney General of the State of New York.

111. Plaintiff also seeks, and is entitled to, attorneys' fees incurred by her counsel, costs of Court, and interest.

### DEMAND FOR JURY TRIAL

112. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be granted:

a.  Awarding Plaintiff unpaid minimum and overtime wages due under the FLSA and the NYLL and its regulations;

b.  Awarding Plaintiff unpaid spread of hours wages due under the NYLL and its regulations;

c.  Awarding Plaintiff damages for Defendant's failure to provide pay stubs as required by the NYLL;

d.  Awarding Plaintiff damages for Defendant's failure to provide a notice upon hire as required by the NYLL;

e.  Awarding the Plaintiff damages for Defendant's retaliation;

f.  Awarding Plaintiff liquidated damages;

g.  Awarding Plaintiff prejudgment and post-judgment interest;

h.  Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees; and

i.  Awarding such other and further relief as this Court deems necessary and proper.

Dated:  November 16, 2023
       New York, New York

TAKEROOT JUSTICE

By:

Kimberly Fayette
123 William St. 4th Floor
New York, NY 10038

        (917) 397-6436

        Samantha Wilhelm
        123 William Street, 4th Floor
        New York, NY 10038
        (646) 923-8315

        *Attorneys for Plaintiff*